# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00826-CR
NO. 03-11-00829-CR

**Van Jackson, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NO. D-1-DC-10-207456 & D-1-DC-10-207444,
HONORABLE CLIFF BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Van Jackson was convicted by a jury of aggravated robbery and evading arrest. *See* Tex. Penal Code Ann. §§ 29.03(a)(2), 38.04(a) (West 2011). After finding that Jackson had previously been convicted of two sequential felonies, the jury assessed punishment at forty-four years' imprisonment for aggravated robbery and fifteen years' imprisonment for evading arrest. *See id.* §§ 12.42(d), .425(b) (West Supp. 2012). On appeal, Jackson claims that (1) the trial court erred in failing to instruct the jury on the lesser-included offense of theft, (2) the trial court erred in denying his motion to suppress statements he made to investigators, and (3) the evidence is insufficient to prove that he had been convicted of two previous felonies. We affirm the judgments of the trial court.

**BACKGROUND**

On the morning of December 10, 2011, Ricardo Rivas left a friend's party in Austin to return to his parked car.[1] Rivas unlocked his car, sat in the driver-side seat, and looked for his cell-phone charger. As he was looking for the charger, a man, later identified as Jackson, opened the passenger-side door and sat in Rivas's car. According to Rivas, Jackson pointed a knife at Rivas's stomach and said "[D]o you see this? . . . [W]ell, start the car and start driving." Rivas, was scared that Jackson would hurt him, so he started his car and began driving while Jackson directed him on where to go.

During this drive, Jackson told Rivas to "give him some money." Rivas told Jackson that he did not have any money with him, but that he could go to an ATM and withdraw some money. Jackson told Rivas to go to an ATM, and Rivas told him that the closest ATM for his bank was downtown. Jackson did not want to go downtown, but in order to prove to Jackson that the nearest bank was downtown, Rivas gave Jackson his cell phone and told him "you can look it up." Jackson took the phone and put it in his pocket. Jackson also took Rivas's garage-door remote from the dashboard and placed it in his pocket. During the drive, which lasted approximately twenty to thirty minutes, Rivas perceived that Jackson was agitated and nervous, and Rivas continually tried to keep Jackson calm.

Jackson ultimately agreed to go downtown, and Rivas parked his vehicle outside of his bank. That particular bank did not have a drive-through ATM, and Rivas told Jackson that he would have to go inside the bank to use the ATM. Jackson replied "[O]kay, but don't do anything

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at trial.

stupid." Rivas went into the bank while Jackson remained in the car. Rivas began getting money from the ATM, but once he realized he was no longer in danger, he got the attention of a security guard and told him that Jackson was trying to rob him. Rivas could see Jackson through the bank's windows, and once Rivas began talking to the guard, Jackson moved into the driver's seat and "took off." The guard called 9-1-1, and officers with the Austin Police Department were dispatched to the scene.

When the first officer arrived, Jackson was driving away from the bank. The responding officer waited for back-up from a second patrol car, then activated his emergency lights to signal Jackson to pull over. Jackson immediately "took off at a high rate of speed" in Rivas's car, and the officers began their highspeed pursuit of Jackson, which at times reached speeds in excess of ninety miles per hour. After a five-mile chase, Jackson crashed Rivas's car into a bridge, and then began to run away on foot. One officer secured the vehicle, at which time he found a partially opened knife in the passenger-side floorboards. This knife matched Rivas's description of the knife Jackson used to threaten him. Two other officers apprehended and arrested Jackson. The arresting officers recovered Rivas's cell phone and garage-door remote on Jackson's person.

Jackson was injured in the crash, and complained to EMS responders that he had pain in the upper part of his leg. EMS transported Jackson to Brackenridge Hospital for treatment. After he was treated, officers transported Jackson back to the police station for questioning. A detective with the Austin Police Department's robbery unit interrogated Jackson about the robbery. Jackson confessed to the robbery, stating that he told Rivas "I have a knife. I don't want to hurt you, so let's go to the bank." The interrogation lasted less than twenty minutes.

3

Jackson was subsequently indicted for aggravated robbery and evading arrest. *See id.* §§ 29.03(a)(2), 38.04(a). At trial, Jackson pleaded not guilty. The State called fourteen witnesses, including Rivas, the arresting officers, and the detective who conducted the interrogation. The State also introduced, over the defendant's objection, the video recording of Jackson's detention and subsequent confession while he was in the interrogation room. Jackson did not call any witnesses. The jury convicted Jackson of the offenses as alleged in the indictment. During the punishment phase, Jackson pleaded "not true" to the enhancement paragraphs, which alleged that he had been convicted of two sequential felonies. *See id.* §§ 12.42(d), .425(b) (enhancing punishment for accused who has been previously convicted of two sequential felonies). The jury found the allegations in the enhancement paragraphs were true, and assessed punishment at forty-four years' imprisonment for aggravated robbery and fifteen years' imprisonment for evading arrest. This appeal followed.

## DISCUSSION

### Lesser-included offense

In his first issue, Jackson claims that the trial court erred in denying his request for a jury instruction on the lesser-included offense of theft. *See id.* § 31.03 (West 2011). We review a trial court's ruling on a request for a lesser-included-offense instruction for an abuse of discretion. *See Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). In order to show that he was entitled to a lesser-included-offense instruction, Jackson must satisfy the two-prong *Aguilar/Rousseau* test. *See Hall v. State*, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005); *see also Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985). The first prong "requires the court to determine whether the lesser offense actually is

4

a lesser-included offense of the offense charged." *Hall*, 158 S.W.3d at 473 (internal citations omitted); *see also* Tex. Code Crim. Proc. Ann. art. 37.09(1) (West 2006) ("An offense is a lesser-included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged . . . ."). The second prong "asks whether the record contains some evidence that would permit a rational jury to find that the defendant is guilty *only* of the lesser-included offense." *Hall*, 158 S.W.3d at 473 (internal citations omitted).

In this case, the first prong of the *Aguilar/Rousseau* test is met because theft is a lesser-included offense of aggravated robbery as charged. *See* Tex. Code Crim. Proc. Ann. art. 37.09(1). As charged in this case, a person is guilty of aggravated robbery if he "commits robbery" and, during the commission of the offense, "uses or exhibits a deadly weapon." *See* Tex. Penal Code Ann. § 29.03(a)(2) (West 2011). A person commits robbery if "in the course of committing a theft" and "with intent to obtain or maintain control of the property," he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *See id.* § 29.02(a)(2) (West 2011). A person commits theft if he "unlawfully appropriates property with the intent to deprive the owner of the property." *See id.* § 31.03(a) (West 2011). Robbery includes all of the elements necessary to prove theft, plus the additional element of threatening or placing another in fear of imminent bodily injury. Therefore, theft can be a lesser-included offense of robbery, and by extension aggravated robbery, because theft can be proven by less than all of the facts required to prove robbery. *See* Tex. Code Crim. Proc. Ann. art. 37.09(1); *see also Jacob v. Smith*, 892 S.W.2d 905, 909 (Tex. Crim. App. 1995) (noting that theft can be lesser-included offense of aggravated robbery).

5

Under the second prong of the *Aguilar/Rousseau* test, Jackson must show that there is "more than a scintilla of evidence" that would support a jury reasonably convicting him of theft and not aggravated robbery. *See Goad v. State*, 354 S.W.3d 443, 446–47 (Tex. Crim. App. 2011) (quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). In order to convict Jackson of theft but not robbery, the jury would have to conclude that Jackson unlawfully appropriated Rivas's property, but that the evidence was insufficient to prove that Jackson "intentionally or knowingly" threatened or placed Rivas in "fear of imminent bodily injury." Rivas's testimony established that Jackson entered Rivas's car, pointed a knife at Rivas's stomach, and demanded that Rivas give him money. Rivas also stated that he was afraid Jackson would hurt him if he did not cooperate and that he did not intend to give Jackson his property. This testimony is corroborated by the uncontroverted evidence that Jackson fled the scene when police arrived, that officers recovered a partially opened knife matching the description of the knife Rivas claimed Jackson used to threaten him, and Jackson had Rivas's phone and garage-door opener in his pockets when he was arrested.

Nevertheless, Jackson claims that the statements he made during his interrogation contradicted Rivas's testimony and provided sufficient evidence for a jury to reasonably conclude that Jackson was not guilty of aggravated robbery. Jackson notes that, during his interrogation, he said that he told Rivas "I don't want to hurt you." Jackson argues that given this statement, the jury could reasonably conclude that Jackson did not intend to place Rivas in fear of imminent bodily harm, and thus, the jury could reasonably convict Jackson of theft and not aggravated robbery. He cites to several cases in which the defendant denied committing an element of the offense, and thus the appellate court found that there was more than a scintilla of evidence upon which the jury could

6

reasonably have acquitted the defendant of the offense charged. *See, e.g.*, *Bignall*, 887 S.W.2d at 23–24 (concluding that defendant entitled to lesser-included-offense charge for theft because some evidence weapon not used in robbery). That is not the case here.

In his interrogation, Jackson admitted that he entered Rivas's car, told Rivas "I have a knife. I don't want to hurt you, so let's go to the bank," told him to drive to an ATM, and then stole Rivas's car when he saw Rivas talking to a security guard. Thus, Jackson's argument takes his statement that he did not want to hurt Rivas out of context. The statement occurred during Jackson's confession to the underlying offense, and therefore this is not a case in which the accused denied criminal activity. *Cf. Bignall*, 887 S.W.2d at 23–24 (noting defendant denied using weapon in robbery); *Williams v. State*, 314 S.W.3d 45, 51–52 (Tex. App.—Tyler 2010, pet. ref'd) (concluding that defendant's testimony that he displayed knife after he abandoned theft was more than scintilla of evidence that he did not commit aggravated robbery). Furthermore, Jackson admitted to having a knife with him during the theft, though he neither admitted nor denied pointing the knife at Rivas. Finally, the knife recovered at the scene matched the description of both the knife Rivas claimed that Jackson pointed at him and the knife Jackson admitted to having when he entered Rivas's car. Thus, we conclude that Jackson's statement, in context, does not constitute more than a scintilla of evidence from which the jury could reasonably convict Jackson of theft but not robbery. *See Hall*, 158 S.W.3d at 473. Therefore, Jackson has failed to satisfy the second prong of the *Aguilar/Rousseau* test, and thus the trial court did not abuse its discretion in denying Jackson's request for a lesser-included-offense instruction of theft. Jackson's first point of error is overruled.

7

**Motion to suppress confession**

In his second issue, Jackson argues that the trial court erred in denying his motion to suppress the statements he made during his interrogation. Jackson claims that his confession was involuntary under both the Due Process Clause and article 38.21 of the Texas Code of Criminal Procedure.[2] *See* U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.21 (West 2006) (providing that statements "freely and voluntarily made without compulsion or persuasion" are admissible); *see also Oursbourn v. State*, 259 S.W.3d 159, 170–72 (Tex. Crim. App. 2008) (explaining distinction between voluntariness under Due Process Clause and art. 38.21). Generally, a trial court's ruling on a motion to suppress is reviewed under a bifurcated standard, giving almost total deference to a trial court's determination of facts or issues that rely upon the credibility of witnesses, but reviewing pure questions of law and questions that do not depend on a credibility determination de novo. *See Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). Given that Jackson's motion to suppress relied solely on the events within his recorded interrogation, the trial court made no credibility determinations, and thus, we review the court's ruling de novo. *See id.*

As the court of criminal appeals explained in *Oursbourn*, whether a statement is voluntary for purposes of due process and whether it is voluntary under the Texas Code of Criminal Procedure are related but distinct issues. *See* 259 S.W.3d at 170–72. Generally, a confession is

---

[2] Jackson acknowledges that he received the mandatory *Miranda* warnings and that the statutory requirements for use of his oral statement were met. *See Miranda v. Arizona*, 384 U.S. 436, 468–69 (1966); *see also* Tex. Code Crim. Proc. Ann. arts. 38.22 § 3(a) (West 2006) (excluding accused's oral statements made during custodial interrogation unless certain requirements are met).

involuntary under the Due Process Clause only when coercive conduct by the police—including subjecting an accused to threats, physical abuse, or extended periods of interrogation without rest or nourishment—is of such a nature that any statement obtained from the accused was likely not of his own free will. *See id.* at 170–71. By contrast, a confession is involuntary under the code of criminal procedure if it was not "freely and voluntarily made without compulsion or persuasion," regardless of whether the coercion or persuasion was the result of police overreaching. *See* Tex. Code Crim. Proc. Ann. art. 38.21; *Oursbourn*, 259 S.W.3d at 171–72. Furthermore, under article 38.22, section 6 of the code of criminal procedure, courts may consider factors such as the accused's youth, intoxication, mental retardation, or other disability in determining whether his statement was voluntary, even though these issues would be irrelevant to a federal due-process claim. *Oursbourn*, 259 S.W.3d at 172–73. Given that this case does not involve a prolonged interrogation, threats, or physical abuse of the nature prohibited by the Due Process Clause, we will analyze this case under articles 38.21 and 38.22, section 6 of the code of criminal procedure. *See Oursbourn*, 259 S.W.3d at 171.

Under the code of criminal procedure, a confession is involuntary if the confessor did not make the decision to confess of his own free will. *Delao v. State*, 235 S.W.3d 235, 239–40 (Tex. Crim. App. 2007); *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996). We determine whether a confession was voluntary based on the totality of the surrounding circumstances under which it was obtained. *Green*, 934 S.W.2d at 98; *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985). A confession is involuntary if it was induced by a promise that was "positive, made or sanctioned by someone in authority, and of such an influential nature that it would cause

9

a defendant to speak untruthfully." *Martinez v. State*, 127 S.W.3d 792, 794–95 (Tex. Crim. App. 2004). General statements made to a suspect that a confession may sometimes result in leniency do not render the confession involuntary. *See Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 2003). The ultimate question is whether, under the totality of the circumstances, the confessor's will was overborne. *Id.* at 855; *Armstrong*, 718 S.W.2d at 693.

In this case, the video recording of Jackson's interrogation shows that he was brought into the interrogation room at 6:00 in the morning after being discharged from the hospital. Jackson was not wearing a shirt, shoes, or socks. Jackson clearly had a bandage on his chest, presumably for injuries he sustained when he crashed Rivas's car or during his subsequent arrest. Jackson was left alone in the interrogation room for approximately one hour before the detective questioned him, though someone did bring him a shirt after approximately forty-five minutes. Jackson asked for food on two occasions, but he was told that he would be given breakfast at the jail. After giving Jackson the required *Miranda* warnings, the detective told Jackson that "what a judge and jury are looking for . . . they like to hear 'I'm sorry.'" The detective went on to say that the three questions that a prosecutor will ask him are is the defendant cooperative, is he honest, and is he sorry. The detective told Jackson "[T]hat stuff matters," and then proceeded to ask Jackson for his version of what happened that night. Jackson initially said "nothing" happened, but then said he "got in the car, . . . told [Rivas] to give me some money, he told me he didn't have none [sic], and I told him to drive me to the bank." Jackson proceeded to narrate the events of the robbery as outlined above. This entire interrogation lasted less than twenty minutes.

10

Jackson argues that the video proves that he was "fatigued, hungry, injured[,] and left isolated in a small room for some time" and that the detective induced his confession by suggesting that he might receive a lighter sentence if he was honest and apologized for robbing Rivas. However, the detective never made a positive promise to Jackson that he would receive a benefit by confessing. Rather, he told Jackson that juries want to hear defendants say they are sorry and that prosecutors want to know if defendants are cooperative, truthful, and apologetic. These general statements were not enough to render Jackson's statements involuntary. *Muniz*, 851 S.W.2d at 254; *Vasquez v. State*, 179 S.W.3d 646, 656–57 (Tex. App.—Austin 2005), *aff'd*, 225 S.W.3d 541, 546 (Tex. Crim. App. 2007).

Furthermore, we cannot say that Jackson's will was overborne by the duration of his detention or the fact that he lacked clothing and food. *See Vasquez*, 179 S.W.3d at 656–57 (concluding that statement was voluntary even though interrogation lasted over seven hours, officers confiscated confessor's shoes, and confessor repeatedly asked for and was denied medication). Although Jackson was arguably tired during the interrogation, the video shows that he was alert, coherent, and could answer the detective's questions. The detective's questioning lasted less than twenty minutes, and at no time was the detective threatening or overbearing. *Cf. Mendoza v. State*, 88 S.W.3d 236, 236, 238–39 (Tex. Crim. App. 2004) (concluding that evidence that officers cursed at accused when he requested attorney and assistant district attorney promised to seek reduced sentence if accused confessed warranted jury instruction on voluntariness of confession). Therefore, we conclude that Jackson's confession was voluntary, and the trial court did not err in denying Jackson's motion to suppress the confession. Jackson's second point of error is overruled.

**Sufficiency of evidence to prove enhancement**

In his third and final point of error, Jackson claims that the evidence is insufficient to prove that he had been convicted of two previous consecutive felonies, and thus, his punishment for these two offenses should not have been enhanced. *See* Tex. Penal Code §§ 12.42(d), 12.425(b) (enhancing punishment if defendant previously convicted of consecutive felonies). In reviewing the sufficiency of the evidence, we determine whether the jury, as the trier of fact, rationally could have found that the enhancement allegations were true. *See Flowers v. State*, 220 S.W.3d 919, 923 (Tex. Crim. App. 2007); *Littles v.* State, 726 S.W.2d 26, 30 (Tex. Crim. App. 1987). We view the evidence in the light most favorable to the jury's finding. *Littles*, 726 S.W.2d at 30.

In order to establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that "(1) a prior conviction exists, and (2) the defendant is linked to that conviction." *Flowers*, 220 S.W.3d at 921–22. "No specific document or mode of proof is required to prove these two elements." *Id.* (noting that "[j]ust as there is more than one way to skin a cat, there is more than one way to prove a prior conviction."). If, as here, the State seeks to prove the prior conviction through documents, the documents must contain "sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted." *Id.* (citing *Doby v. State*, 454 S.W.2d 441, 413–14 (Tex. Crim. App. 1970)). Proof of previous conviction is like a "jigsaw puzzle" in which individual pieces are usually meaningless, but "'when the pieces are fitted together, they usually form the picture of the person who'" was previously convicted. *Id.* at 923 (quoting *Human v. State*, 749 S.W.2d 832, 835–36 (Tex. Crim. App. 1988) (op. on reh'g)).

12

In this case, the State introduced certified copies of two records from the Texas Department of Criminal Justice which allegedly correspond to Jackson's two prior convictions. These records, commonly referred to as "pen packets," contain certified copies of the judgments of conviction as well as separate photographs and fingerprints taken from the prisoner when he was incarcerated for each offense.[3] *See id* at 923 n.14 (explaining admissibility of pen packets). The beginning of each pen packet contains an affidavit stating that the packets are true and correct copies of the department of criminal justice's records. These affidavits list the inmate's name as "Jackson, Van Aleric" and list the cause number for his conviction as well as his unique inmate identification number assigned to him by the department of criminal justice.

Jackson claims that the pen packets are insufficient to establish that he was previously convicted of the offenses depicted in the pen packets. Specifically, he asserts that the pictures and fingerprints taken of the inmate do not contain references to the cause number for the corresponding convictions, and thus the jury could not reasonably conclude that he is the individual convicted for the underlying offense. However, both the photographs and the fingerprint cards within each pen packet contain Jackson's name and inmate number assigned to him by the department of criminal justice when he was incarcerated. As previously stated, the affidavit contained within each pen packet lists both Jackson's department of criminal justice identification number and the cause number from his conviction. These numbers are identical to the numbers on the various documents within the pen packet, and thus the affidavit sufficiently links the certified copies of Jackon's

---

[3] The State introduced expert testimony that the fingerprints in each of the pen packets matched Jackson's fingerprints. *See Blanks v. State*, 172 S.W.3d 673, 675 (Tex. Crim. App. 2005) (noting that expert should match fingerprints in pen packets to defendant).

convictions with his photograph and fingerprint card. *See id.* at 923; *see also McGarity v. State*, No. 04-10-00112-CR, 2011 Tex. App. LEXIS 1297, at *3–6 (Tex. App.—San Antonio Feb. 23, 2011, no pet.) (concluding that affidavit listing cause number and prison intake number sufficient to link judgment of conviction and fingerprint card). Considering the evidence in the light most favorable to the jury's finding, we conclude that the evidence is sufficient for the jury to find the enhancement paragraphs were true beyond a reasonable doubt. *Littles*, 726 S.W.2d at 30. Jackson's third point of error is overruled.

## CONCLUSION

Having overruled all of Jackson's issues on appeal, we affirm the judgments of conviction.

_____

Diane M. Henson, Justice

Before Justices Puryear, Henson, and Goodwin

Affirmed

Filed:   October 5, 2012

Do Not Publish

14